STATE of Missouri, Respondent,

v.

Larry E. BRUCE, Appellant.

No. WD 39220.

Missouri Court of Appeals, Western District.

Dec. 15, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 1988.

Application to Transfer Denied March 15, 1988.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before CLARK, P.J., and TURNAGE and MANFORD, JJ.

TURNAGE, Judge.

Larry E. Bruce was found guilty by a jury of tampering, first degree, § 569.080.1(2), RSMo 1986. Punishment was set at three years imprisonment. Bruce contends error in the admission of his out-of-court statement and the striking of six out of eight black venire persons by the prosecutor. Affirmed.

In May of 1986, Cynthia Bryant parked her pickup in a parking lot at 50th and Main in Kansas City. When she returned shortly after midnight, she saw a man standing between her truck and the car next to it. When she realized the man was relieving himself, she slowed down and then noticed another man standing between her truck and the car. Both men got in the car and drove out of the parking lot. As the car passed, Byrant got the license number.

When Bryant went to her truck, she noticed a window broken and her cassette tape case and various articles from the glove compartment missing. She reported the matter to the police along with the license number.

The license number was traced to Bruce, and a detective went to the Bruce home and talked with him. Later, Bruce went to the police station and gave the detective a statement. The detective testified that he gave Bruce the *Miranda* warning before Bruce made a statement. In his statement, Bruce said that he and a man by the name of Kevin or Keith had driven to the parking lot at 50th and Main where Bruce parked next to the pickup. Bruce said he got out

to relieve himself, and his passenger came around to do likewise. He said his passenger broke the window on the pickup and took various items from it. Bruce stated that he saw a woman approaching and told his friend, and they both got in the car and left.

The court admitted the detective's testimony of Bruce's statement over objection, after having overruled a motion to suppress. As a part of his case, Bruce testified and repeated the same version of what had happened in the parking lot as he had given in his statement to the detective.

■ Bruce contends that it was error to receive the testimony of the detective giving Bruce's statement because the statement was taken in violation of Bruce's Miranda rights. It is not necessary to decide if the statement was voluntary or not because Bruce testified before the jury and gave the same version of the incident as he had given in his challenged statement to the detective. This removed any prejudice that may have been caused by receiving the out-of-court statement. *State v. Brown*, 654 S.W.2d 290, 291[1] (Mo.App.1983).

Bruce next contends that he was denied a trial before a fair and impartial jury in violation of his sixth amendment rights and his rights under Art. 1, § 22(a) of the Missouri Constitution. The Missouri constitutional question has not been preserved for review.

■ In his brief, Bruce states that he is white. He relies on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), for his claim that his sixth amendment rights were violated by the State using its peremptory challenges to exclude six of eight blacks on the jury panel. This court recently reiterated that a white defendant has no standing to complain of the State's use of peremptory challenges to strike blacks. *State v. Smith*, 737 S.W.2d 731, 733[2] (Mo.App.1987).

■ The State correctly argues that the sixth amendment does not guarantee criminal defendants a petit jury which reflects a fair cross-section of the community. As stated in *Smith*, the right assured is that

the petit jury will be drawn from a venire that represents a fair cross-section of the community. *Id.* at 734.

In *Smith*, this court stated that even if Smith had a right to a fair cross-section on his petit jury that right was not violated. The State expresses concern that *Smith* might be construed to hold that there is a fair cross-section requirement under the sixth amendment for the petit jury in view of that language. *Smith* should not be read as in any way extending a fair cross-section requirement to a petit jury under the sixth amendment. *Smith* correctly stated that the sixth amendment does not require the petit jury to meet a fair cross-section test. *Id.* at 733–34.

The judgment is affirmed.

CLARK, J., concurs.

MANFORD, J., dissents in Separate Opinion.

MANFORD, Judge, dissenting.

I must respectfully dissent.

There is no disagreement with the disposition by the majority opinion relative to appellant's claim of error in the admission of his out-of-court statement. Proper disposition of that alleged error is made under *State v. Brown*, 654 S.W.2d 290, 291 (Mo. App.1983).

Exception is taken, however, to the disposition of appellant's second point, that being his challenge to the striking of black venire persons by the prosecution.

This dissent is based upon the same rationale expressed by this writer in his dissent in *State v. Smith*, 737 S.W.2d 731, 735 (Mo.App.1987), and the views set forth in *Smith, supra* are incorporated herein. What *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Smith, supra;* and the present case continue to illustrate is the hypocrisy in the law today. This hypocrisy arises from the hue and cry and repeated assertion that the law is color blind or race neutral; but then on the other hand, *Batson* and other rulings provide a constitutional safeguard limited by the race of the accused. As stated in *Smith*, 737 S.W.2d at 742, the only thing separating the various defendants and a right versus the denial of a right to challenge particular venire persons, is the color of their skin. So, as long as *Batson, Smith,* and other cases follow such reasoning, discrimination will never be eliminated from jury selection.

Of late, this writer has come to the conclusion that the initial purpose of the jury has been reduced to a secondary function in our legal system. At inception, the jury was a method by which a designated number of citizens were selected to listen to facts introduced into evidence from which certain deductions were made; and if those deductions determined a criminal act had occurred and the accused was guilty as defined by the law, the jury would make a finding of guilty. Absent such findings, the jury would direct an acquittal.

At the present time, however, the prominent feature in jury selection is to insure to an accused that persons of his or her race are not purposefully excluded from serving as potential jurors. This writer has heard that the justification for such practice is that persons of the same ethnic or racial status (as the accused) can more readily understand the acts and conduct of the accused. This is not only pure nonsense but, even more seriously, underminds the real purpose of the jury, that being to listen to the evidence and from those facts and under proper instruction upon the law, determine guilt or innocence. Stated another way, it is not a juror's function to decide guilt or innocence because of the color of the skin of the accused or whether the accused is from the same general neighborhood as prospective jurors, or any other racial or social relationship which might actually or potentially interrelate an accused with a prospective juror.

Having deviated from the original purpose and intent of the jury function, the system not only permits, but in fact, encourages and emphasizes the selection of jurors which will be most favorable to one side of a case, be it the prosecution or defense, as opposed to encouraging and emphasizing and, in fact, demanding the

selection of jurors who display the required intelligence to listen to the evidence, make the necessary deductions therefrom, and who will follow the instructions upon the law.

Once again, this writer emphasizes that the elimination of peremptory challenges in criminal cases will aid in the return of the jury process to its original purpose.

Correspondingly, the elimination of the peremptory challenges in criminal cases will remove the practice of juror selection because of racial, social, or any other favorable relationships between an accused and potential jurors. Favoritism for or against one side or the other, be in prosecutorial or defense, has no place in our legal system, yet *Batson, Smith,* and the present case continue to at least encourage, if not demand, such favoritism.