Daniel Albert SALKIL,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 15462.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 19, 1988.
Motion for Rehearing and/or Transfer
Denied and Overruled Nov. 2, 1988.

Elizabeth A. Bock, Asst. Public Defender, Springfield, for movant-appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for respondent.

MAUS, Judge.

A jury found movant, Daniel Albert Salkil, committed capital murder, § 565.001, RSMo 1978 (now repealed), by strangling to death his estranged wife. He was sentenced to imprisonment for life without the possibility of parole for 50 years. His conviction and sentence were affirmed on appeal. *State v. Salkil*, 649 S.W.2d 509 (Mo.App. 1983). Following an evidentiary hearing, his motion under Rule 27.26 for post-conviction relief was denied.[1] Movant asserts three points on appeal.

A summary of the evidence resulting in movant's conviction is found in *State v. Salkil*, supra. For the consideration of movant's three points on appeal, it is sufficient to observe that evidence included the following. Within a relatively short time after the homicide, movant was confined on an unrelated charge in the Webster County jail. There he was a cell mate of Virgil Marcum. Marcum was a hired law enforcement informant in a drug investigation. Later, movant was transferred to the Greene County jail. Marcum and Jerry Evans were also inmates of the Greene County jail at that time. The testimony of Virgil Marcum at the underlying criminal trial provided crucial evidence to establish movant's guilt. That testimony consisted of the movant's admissions of guilt overheard by or related to Marcum. It included movant's detailed account of the circumstances of the homicide. Evans testified that in the Greene County jail he overheard movant tell inmate Kenneth Crenshaw "something about a fight with Jan—that it was an accident and he was sorry" and that "he thought he could get out of it pretty easily."

■ Movant's first point is that he was denied the effective assistance of counsel because "trial counsel failed to investigate and interview Webster County Sheriff Gene Fraker and inmates of the Webster County and Greene County jails who had contact with state's witnesses Virgil Mar-

cum and Jerry Evans...." To prevail upon such a ground for post-conviction relief, a movant must present proof of the following elements. "To establish the alleged ineffective assistance, the appellant had to prove the witnesses could have been located through reasonable investigation; they would have testified if called; and their testimony would have provided a viable defense." *Hogshooter v. State*, 681 S.W.2d 20, 21 (Mo.App.1984). That proof must establish those elements by the preponderance of all the evidence. *Armour v. State*, 741 S.W.2d 683 (Mo.App.1987); *Cook v. State*, 741 S.W.2d 678 (Mo.App.1987).

To support his first point, movant cites his testimony to the following effect. He told trial counsel that he wanted him to investigate a trustee at the Webster County jail who was a personal friend of the victim's mother and father. He also wanted him to investigate "another guy from Seymour that was real good friends with my father-in-law, and I can't think of his name." He wanted this investigation because the trustee and the other man were always talking to Virgil Marcum. His testimony provides the inference he suspected these persons were telling Marcum of the circumstances of the movant's wife's death. He also wanted trial counsel to talk with the Webster County Sheriff. This was to establish "that Virgil Marcum was never placed back in my cell when he made his first statement.... Sheriff Fraker would have knowed [sic] where Virgil Marcum was placed or if he was released." Movant testified that trial counsel told him that such investigation wouldn't do any good. When asked if there was anyone else he asked trial counsel to interview at the Webster County jail, movant answered, "No."

On the issues raised by this testimony of the movant, his experienced and able trial counsel testified as follows. He was concerned that someone at the Webster County jail was providing Marcum with information. Trial counsel went to the Webster

1. Movant's sentence was pronounced prior to January 1, 1988, and a motion under Rule 27.26 was pending on that date. Accordingly, his motion for "post-conviction relief shall continue to be governed by the provisions of Rule 27.26 in effect on the date the motion was filed." Rule 29.15(m).

County jail. He talked with a trustee who was "a distant relative by marriage or something with Mr. Salkil's in-laws" and three or four other people that were inmates at the Webster County jail. He was unable to find any information to establish that the details of Marcum's testimony were coming from sources other than movant. He was unable to find anyone there with any information that would suggest one way or the other that the reported conversation between movant and Marcum occurred. He did not contact the sheriff because the sheriff kept no records that would show where the various inmates were housed within the jail. From trial counsel's investigation at the jail and study of the news media accounts, he determined that "unfortunately there were things that he [Marcum] had testified to that had never been revealed to the news media." In this connection, the prosecutor testified that it was his recollection "that Mr. Marcum reported information to the police that could only come from the individual who committed the crime."

Under this point movant also argues that trial counsel failed to investigate the background of Jerry Evans. He relies upon trial counsel's contention to the trial court that he had not had time to investigate Evans. He further relies upon the affidavit of trial counsel that he had acquired information which he believed would establish that Evans' testimony was false and had been manufactured by Marcum. This affidavit was incorporated in movant's motion for a new trial.

Trial counsel testified that he did go to the Greene County jail. He took a statement from Evans which established Evans' fear of Marcum. It was used in cross-examination. He did locate Evans' cell mate Crenshaw. Crenshaw was produced as a defense witness at the underlying trial and testified that he did not have the reported conversation with Salkil. The authorities at the Greene County jail had no records from which trial counsel could have determined the associations between the prisoners in the jail. He was given the name of an inmate who purportedly could establish that Evans' testimony was not true and

was manufactured by Marcum. This was the basis of the affidavit attached to the motion for a new trial. Subsequent to the determination of that motion, trial counsel did locate this inmate. At the time the inmate was a prisoner in the Federal Medical Center. Trial counsel testified that when he interviewed this prisoner, the prisoner

> indicated to me that if I wanted to guarantee him that the federal authorities would parole him that he would basically say anything that I wanted him to. And, in the end, basically told me that whatever it was that I was quoting to him that I had received as information from the jail authorities due to my inability to make those promises was just simply not true.

Trial counsel did not interview Sheriff Fraker. However, he had an uncontradicted reasonable basis for not doing so. Even now movant does not prove or even suggest any specific favorable evidence such an interview would have produced. With the exception of talking with Sheriff Fraker, trial counsel's investigation exceeded the investigation movant contends should have been made.

It is apparent movant's proof in support of his first point does not meet the required standard as set forth above. His first point fails.

■ The movant's second point is that he received ineffective assistance of counsel because his trial counsel "refused to permit movant to testify in his own defense...." Movant testified that upon advice of counsel he initially decided not to testify. But, just before the instructions were read he changed his mind. He told his trial counsel he wanted to testify, but his counsel said no. Trial counsel testified he advised the movant of the "pros and cons" of movant testifying. The movant made the decision not to testify. Trial counsel denied preventing movant from testifying. The movant's credibility was for the motion court. *Burroughs v. State,* 590 S.W.2d 695 (Mo. App.1979). The motion court found trial counsel never refused to let the movant

testify. That determination is supported by the evidence and the point is denied.

The movant's last point is that he was denied effective assistance of counsel because his "trial attorney failed to object and request a mistrial when the trial judge and members of the victim's family conversed and associated with jurors during the movant's trial...." The relevant portion of the movant's third amended motion alleged "Movant was denied a fair trial before an impartial jury, and due process as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Sections 10, 18(a), and 19 of the Missouri Constitution when the victim's mother and court talked to and associated with the jury."

█ When the movant first attempted to introduce evidence of jury misconduct, the state objected on the basis that jury misconduct was trial error and not cognizable in a 27.26 proceeding. The motion court correctly sustained the objection. *Parker v. State*, 614 S.W.2d 776 (Mo.App.1981).

█ Thereafter, in an offer of proof, members of movant's family testified to the following effect. They observed the trial judge go into the jury room during deliberations and remain approximately thirty minutes. On several occasions they saw members of the victim's family associating with and laughing and talking with the jury. Movant's family members reported these incidents to trial counsel. He told them that it did not matter.

Movant bases his argument on his third point on this offer of proof. Neither movant nor the state asked trial counsel if he was told of the purported jury misconduct. The motion court had no opportunity to determine the credibility of that remarkable testimony. By this point movant attempts to place before this court an issue not before the motion court and support that point by properly excluded testimony.

Movant indirectly acknowledges the testimony of his family does concern trial error which is not ordinarily cognizable in a 27.26 proceeding. But, he argues, it is within the exception alluded to in the following rule: "Mere trial errors are to be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal." Rule 27.26(b)(3). See *Dixon v. State*, 624 S.W.2d 860 (Mo. App.1981); *Stewart v. State*, 578 S.W.2d 57 (Mo.App.1978).

Movant did not offer the testimony in question on the basis of this exception. It is not now available to him. There must be a limitation on the presentation of shifting claims of legal error.

Moreover, the scope of this exception is ill defined, but it is very narrow. It encompasses circumstances not present in this case. The proffered testimony is to the effect the movant knew of the alleged misconduct before the end of the trial. "A party who claims misconduct affecting a juror is required to call such fact to the court's attention as soon as he learns of it and has an opportunity to do so." *Parker v. State*, supra, at 778. The proffered testimony would not have established error on direct appeal. It does not do so in a 27.26 proceeding. In such a proceeding it could serve only to establish ineffective assistance of counsel on a basis not pleaded.

It is fundamental that an issue not pleaded in a motion for post-conviction relief or tried by implied consent cannot be first raised on appeal. *Walker v. State*, 715 S.W.2d 261 (Mo.App.1986). Movant's third point is a dramatic illustration of the wisdom of the following observation: "It takes scant ingenuity for a movant, on appeal, to raise, for the first time, a factual issue unrefuted by the case record. Orderly procedure requires that we ensure no trial court will be mousetrapped that way." *Mallett v. State*, 716 S.W.2d 902, 905 (Mo. App.1986). The movant's third point has no merit and the judgment of the motion court is affirmed.

FLANIGAN, P.J., and HOGAN and PREWITT, JJ., concur