Wiley Lee **JOHNSON**, Appellant,

v.

**STATE of Missouri**, Respondent.

No. WD 39829.

Missouri Court of Appeals,
Western District.

Dec. 6, 1988.

Gregg T. Hyder, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before COVINGTON, P.J., and NUGENT and GAITAN, JJ.

NUGENT, Judge.

Wiley Lee Johnson appeals from the hearing court's denial of his Rule 27.26 motion to set aside his judgment and sentence. He seeks relief from his jury conviction of assault in the first degree, unlawful use of a weapon and armed criminal action. The trial court entered concurrent sentences of ten years imprisonment for assault and five years for unlawful use of a weapon. The court also sentenced him to a consecutive sentence of five years imprisonment for the armed criminal action, bringing the total sentence to fifteen years.

We affirm the hearing court's judgment.

Mr. Johnson's conviction arose as follows. On November 30, 1984, he fired a shotgun into the home of his estranged wife, Helen Johnson, wounding her. At his trial, both Alice Aulabaugh, Mr. Johnson's girlfriend, and Mrs. Johnson testified about the shooting. Ms. Aulabaugh testified that the defendant went to Mrs. Johnson's home that night planning to kill his wife.

Mr. Johnson's theory of defense was that he did not intend to kill Mrs. Johnson. Instead, he intended merely to frighten her. He argued that he aimed the shotgun blast at her door for that purpose only. He testified to his military background and training in weapons to show that if he intended to kill someone with a firearm, "they would be dead instead of just wounded."

The jury returned a guilty verdict and the court entered judgment accordingly. On direct appeal, we affirmed the judgment of the trial court. *State v. Johnson,* 710 S.W.2d 7 (Mo.App.1986). Mr. Johnson has now moved under Rule 27.26 to set aside the judgment and sentence, alleging that he was denied effective assistance of counsel, that the prosecutor engaged in prejudicial misconduct, that his consecutive sentences subjected him to double jeopardy, and that the absence of blacks on the jury denied him a fair trial by a cross-section of his peers. Following an evidentiary hearing, the court denied his motion. This appeal followed.

On appeal Mr. Johnson claims that he was denied effective assistance of counsel in that his trial counsel: failed to consult sufficiently with him before trial; failed to interview prospective witnesses; failed properly to advise him of a possible plea bargain; failed to introduce letters that he had provided to counsel to impeach Ms. Aulabaugh; failed to present expert testimony concerning a defense of Vietnam post-traumatic stress syndrome; and failed to investigate Ms. Aulabaugh's background of mental illness. He also contends that the prosecutor coerced his wife to testify and thereby deprived him of his due process rights. He argues that his consecutive sentences subject him to double jeopardy and, finally, that because no blacks appeared on the jury he was denied a trial by a fair cross-section of the community.

Mr. Johnson testified at the Rule 27.26 hearing that his trial counsel, Mark Roberts, met with him only four or five times before his trial. He told Mr. Roberts of possible defenses arising from his impaired vision in one eye and the effect of his medications and alcohol use on his mental and physical state at the time of the shooting. He requested a psychiatric examina-

tion to explore the effect of his Vietnam experience on his mental and emotional state. Mr. Johnson also told his attorney about his military experience and weapons training.

Movant Johnson testified that he informed counsel of three witnesses, Chanel Wright, Kenneth Wright and Joseph Hanna, whose testimony could impeach Ms. Aulabaugh's credibility. Mr. Johnson also provided counsel with letters Ms. Aulabaugh had written him. He testified that Mr. Roberts brought two separate offers from the prosecutor to his attention. One Mr. Johnson rejected because it included a seventeen year sentence. He testified, however, that counsel refused to consider a second offer because of counsel's "ethical" objection to a guilty plea for assault.

Mr. Johnson also testified that although he is a black man, only whites appeared on the jury. Mr. Roberts testified that he did not recall seeing any blacks on the jury panel. Mr. Johnson felt that the absence of blacks on the jury deprived him of a fair trial.

Chanel Wright and Kenneth Wright both testified at the Rule 27.26 hearing that they would have been willing to testify at trial. The facts to which they would have testified contradicted information that Ms. Aulabaugh had provided to the police. Ms. Aulabaugh did not, however, mention in her testimony the information that Ms. or Mr. Wright's testimony would have impeached. Mr. Hanna did not testify at the Rule 27.26 hearing.

Mrs. Johnson testified at the hearing that she initially refused to testify unless the state would also prosecute Ms. Aulabaugh on a different matter. She stated that the prosecutor intimidated her into testifying by telling her that she would be arrested if she did not comply with a subpoena. The prosecutor did not inform her that she could refuse to testify by asserting her spousal privilege.

The prosecutor, Jerome Antel, testified that Ms. Johnson changed her mind about testifying several times during trial preparation. He subpoenaed her, and informed her that the subpoena could be enforced by

her arrest on a writ of attachment if she did not appear at trial. Mrs. Johnson told Mr. Antel after the trial that she appreciated his efforts in the prosecution of the case and that she thought she had done the right thing by testifying.

Defense counsel, Mr. Roberts, testified that he did not remember the exact number of his visits with his client, but that the jail log indicated eight visits. During those visits they discussed possible defenses. They decided to show that Mr. Johnson lacked the intent to harm Mrs. Johnson by emphasizing his military training. They would explain that the defendant's marksmanship skill gave him the ability to kill anyone at whom he aimed a weapon. Therefore, if he had intended to kill Mrs. Johnson, she would be dead instead of wounded. That theory would support his testimony that he shot only at the door, intending to frighten Mrs. Johnson. Counsel decided that any mention of Mr. Johnson's eye injury or his intoxication would be inconsistent with a defense based on defendant's marksmanship ability. Therefore, he did not pursue that information any further.

Mr. Roberts testified that he informed Mr. Johnson of his negotiations with the prosecutor, but the movant rejected the prosecutor's offers because he was unwilling to admit to assault. Counsel reviewed the letters that Mr. Johnson provided. He used one of them to impeach Ms. Aulabaugh, but he determined that the information contained in the other letters would be more damaging than helpful. He did not pursue her mental history because he believed that she was a competent witness.

The hearing court found no evidence of ineffective assistance of counsel. It concluded that counsel had presented a "very workman-like defense." The court found no evidence sufficient to support the allegation that the prosecution coerced Mrs. Johnson's testimony, nor did the court find any evidence to support the movant's contention that blacks were systematically excluded from the jury. Finally, the court concluded that the movant's sentence for armed criminal action could properly run

consecutively with his sentences for assault and unlawful use of a weapon.

On appeal we will uphold the findings of the hearing court unless those findings are clearly erroneous. *Eldridge v. State,* 592 S.W.2d 738, 740 (Mo.1979) (en banc). To support his claim of ineffective assistance of counsel the defendant must not only show that counsel's performance failed to meet the standards of the profession but also that he was prejudiced as a result of counsel's deficient performance. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. 1987) (en banc). A trial strategy that proves unsuccessful will not, without more, support a claim that counsel did not provide adequate representation. *Id.* at 858.

The evidence clearly supports the hearing court's finding that defendant received effective assistance of counsel. First, the court could properly believe Mr. Robert's testimony that Mr. Johnson, not his counsel, decided to reject the prosecutor's plea bargain. Counsel's decision to avoid inconsistent defenses was clearly an exercise of trial strategy. Therefore, we will not subject to our second-guessing in a post-conviction hearing counsel's refusal to present evidence of Mr. Johnson's impaired vision, intoxication, or mental instability. *Id.*

Counsel's decision not to call Mr. Wright or Ms. Wright as impeachment witnesses was similarly an exercise of trial strategy. *Porter v. State,* 682 S.W.2d 16 (Mo.App. 1984). Moreover, because their testimony was irrelevant to Ms. Aulabaugh's testimony, defendant was not prejudiced by their absence. Because Mr. Hanna did not testify at the hearing, the movant failed to carry the burden of proving that he suffered prejudice as a result of counsel's failure to call Mr. Hanna as a witness. *See Smith v. State,* 684 S.W.2d 520, 523 (Mo. App.1984). The hearing court properly denied movant's claim of ineffective assistance of counsel.

Mr. Johnson also contends that the prosecutor, by informing Mrs. Johnson that she could be arrested for her failure to comply with a subpoena, coerced her testimony. This coercion, he argues, deprived him of due process of law. The evidence at the hearing that Mrs. Johnson thanked the prosecutor for his help in convicting Mr. Johnson and that she told Mr. Antel that she was glad that she testified contradicts Mrs. Johnson's testimony that the prosecutor intimidated her into testifying. Thus, the evidence supports the hearing court's finding that Mrs. Johnson's testimony was not the product of coercion.

No evidence contradicts movant's testimony that the jury contained only whites. Nevertheless, his claim that the state denied him the right to trial by a fair cross-section of the community must fail. That type of claim is not appropriate in a Rule 27.26 hearing. To establish a claim for violation of the requirement that a jury must be drawn from a fair cross-section of the community, a defendant must challenge the jury panel at trial and at that time present the trial court with evidence of systematic exclusion of blacks. *See Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979); *Benson v. State,* 611 S.W.2d 538, 541–42 (Mo.App. 1981). Any error in the trial court's ruling on that evidence is a trial error, reviewable only on direct appeal. *Id.*

Nevertheless, we find that the movant's evidence does not support his claim. Other than his and his counsel's observations that only whites appeared on the jury, the movant introduced no evidence that the state systematically excluded black jurors from the panel. The absence of blacks on a jury does not alone establish systematic exclusion. *State v. Hamilton,* 705 S.W.3d 60, 64 (Mo.App.1985). The hearing court correctly denied this point.

Finally, movant's challenge to his consecutive sentences is an attempt to re-litigate an issue decided on his direct appeal. In his direct appeal, he argued that his sentences on all three counts subjected him to cruel and unusual punishment and deprived him of due process. Here, he argues that the consecutive sentence imposed for the armed criminal action subjected him to double jeopardy. Because we rejected

his claim on direct appeal, he may not renew his claim, even on alternative grounds, in a Rule 27.26 motion. *Gilmore v. State,* 741 S.W.2d 704, 707 (Mo.App. 1987).

Nevertheless, we find that his claim has no merit. The United States Supreme Court in *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), rejected the contention that the Double Jeopardy Clause precludes consecutive sentences for separate crimes arising from a single act. If the criminal statute clearly reveals that the legislature intended to provide consecutive punishments for each crime arising from a single act, such punishment may be imposed without violating that clause. *Id.* at 368–69, 103 S.Ct. at 679–80. In *State v. Kirksey,* 725 S.W.2d 611 (Mo.App.1987), the Eastern District recognized that § 571.015[1] clearly provides that punishment for armed criminal action may be imposed in addition to any punishment imposed for the underlying felony.

Accordingly, we affirm the judgment of the hearing court.

All concur.

1. Revised Statutes of Missouri, 1986.