**STATE of Missouri, Respondent,**

v.

**Darron JACOBS, Appellant.**

**No. WD 43180.**

Missouri Court of Appeals, Western District.

July 2, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 1991.

Peter J. Koppe, Kansas City, for appellant.

William L. Webster, Atty. Gen., Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and SHANGLER and ULRICH, JJ.

KENNEDY, Presiding Judge.

Appellant Darron Jacobs was convicted upon jury trial on the charges of second degree murder, first degree assault, two counts of first degree attempted robbery, and four counts of armed criminal action. The court entered judgment in accordance with the verdict and sentenced appellant to life imprisonment plus forty-five years. He has appealed to this court and raises four allegations of error.

■ We consider first appellant's allegation that the trial court erred in overruling his motion for judgment of acquittal because "insufficient evidence as a matter of law was presented to justify the submission to the jury of any of the eight counts charged...." In deciding this issue, we consider the evidence and all reasonable inferences supportive of the verdict in the light most favorable to the verdict, and disregard those portions of the record contrary to a finding of guilt. *State v. Seeger*, 725 S.W.2d 39, 40 (Mo.App.1986); *State v. Guinan*, 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); *State v. McDonald*, 661 S.W.2d 497, 500 (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). The test is

whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that appellant was guilty. *Seeger* 725 S.W.2d at 40; *State v. Bonuchi*, 636 S.W.2d 338, 340 (Mo. banc 1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983); *State v. Kelly*, 539 S.W.2d 106, 109 (Mo. banc 1976).

Viewed in that light, the evidence establishes that on February 8, 1989, Brenda Taylor approached appellant about committing a robbery. Taylor indicated that she wanted appellant to rob two men with whom she had an arrangement regarding the sale of drugs out of her apartment. Pursuant to the arrangement, Taylor, in exchange for a portion of the drug proceeds, agreed to let Darren Norton and Lance Turner use her apartment to sell drugs. Taylor was apparently unsatisfied with her share of the money, however, and enlisted appellant to rob Turner and Norton.

Appellant then recruited Joseph Burns, Lamont Owens and Mikkis Taylor to carry out the robbery. Appellant gathered the three together and described his plan. According to the plan, appellant and Shawntra Taylor would enter Brenda Taylor's apartment first. Burns, Owens and Taylor would arrive at the apartment about five or ten minutes later. Appellant was supposed to be "robbed" also "[s]o they wouldn't think he had anything to do with it." When the three men entered the apartment they were supposed to make everybody lie on the floor, then "search them and take everything they had." Appellant had instructed them to take money, drugs and a gold chain from Norton and Turner.

Prior to the planned robbery, appellant distributed a 9 mm. gun to Owens, a .38 caliber gun to Burns and shotgun shells to Taylor for his 12–gauge shotgun. When the three men arrived at the apartment, they knocked on the door and when it was answered they yelled, "Get down. Everybody get down on the floor." Brenda Taylor responded, "They [Norton and Turner] just went out the back door." Owens, Burns and Taylor then proceeded outside in pursuit of Norton and Turner. Norton and Turner were confronted at their car. During the gun battle, Norton was killed and Turner was wounded.

Appellant claims that insufficient evidence was presented to justify submission of the eight counts to the jury, but does not specifically address the evidence as it relates to the eight counts individually. He concludes that because the evidence was "neither substantial nor convincing," the court erred in failing to grant acquittal for appellant on all eight counts. We disagree. The evidence produced by the State was evidence from which rational jurors could have found beyond a reasonable doubt that appellant was guilty. The State is not required to conclusively establish guilt nor exclude every hypothesis of innocence. *State v. Overkamp*, 646 S.W.2d 733, 737 (Mo.1983); *State v. Prier*, 634 S.W.2d 197, 199 (Mo. banc 1982). We hold a submissible case was made and the trial court did not err in failing to grant acquittal for appellant.

Appellant's next allegation of error is that the trial court "erred in overruling defendant's objections to the jury panel and jury, as they were both improperly constituted." Appellant alleged that Jackson County is 23% black and his jury panel was only 20% black. He argues that this is not representative and denies him a fair cross-section of the community. Appellant similarly alleges that an imbalance exists between his age and the age of most of the members of the jury panel.

We will first address appellant's assignment of error that his jury panel was improperly racially composed. Appellant provides no support for his allegation that Jackson County is 23% black. Assuming, however, that this is indeed the case, appellant's claim of fair cross-section violation fails under the test established in *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). In *Duren*, the Supreme Court provided a three-part test that must be satisfied in order to prevail on a claim of violation of the requirement of a fair cross-section of community representation: 1) the persons alleged excluded con-

stituted a distinctive class in the community; 2) the representation of this class in the array does not fairly and reasonably relate to their numbers in the community; and 3) this underrepresentation results from systematic exclusion of the group in the jury selection process. *Id.* at 364, 99 S.Ct. at 668–69.

■ There is a strong presumption that the jury tendered at the outset of trial has been properly selected. *State v. Williams*, 767 S.W.2d 87, 90 (Mo.App. 1989); *State v. Bynum*, 680 S.W.2d 156, 160 (Mo. banc 1984). A venire will be held to be improperly constituted only for substantial reasons. *Id.*

■ As was stated by this court in *State v. Davis*, 646 S.W.2d 871, 874 (Mo.App. 1982), that blacks are a distinctive class within Jackson County, Missouri, for purposes of the *Duren* test, is not disputed. However, this point must be ruled against appellant because of the second and third parts of the *Duren* tests. The court in *Davis* held that the percentage of blacks as a group in the venires of the county must be "substantially" less than the population figure of blacks living in the county, in order to prevail on this claim. The court held that a disparity of 4.5% between the blacks in the venires of the county and the blacks living in the county did not meet the requirement of the second part of the *Duren* test. In this case appellant has alleged a 3% disparity—that this venire was only 20% black but Jackson County is 23% black. A disparity of 3% is not substantial under the meaning of *Duren.*

■ Appellant's challenge to the venire must also fail because appellant introduced no evidence that the State systematically excluded black jurors from the panel. In order to prevail on a claim of violation of the requirement that a jury must be drawn from a fair cross-section of the community, a defendant must present the trial court with evidence of systematic exclusion of blacks. The absence of blacks on a jury does not alone establish systematic exclusion. *Johnson v. State*, 762 S.W.2d 484, 487 (Mo.App.1988). "The systematic exclusion of a distinctive group is not estab-

lished by the under-representation or non-representation of that group on a particular jury panel.... Evidence as to a single venire panel does not satisfy the test requirements prescribed by *Duren.*" *State v. Williams*, 767 S.W.2d at 90. Appellant argued only that his venire was not representative; he presented no evidence of systematic exclusion. This assignment of error is denied.

■ Appellant, in addition to challenging the venire, also challenges the racial composition of the petit jury. This argument is similarly without merit. It is well settled that the fair cross-section requirement does not extend to the petit jury. *State v. Bruce*, 745 S.W.2d 696, 697 (Mo.App.1987). A defendant only has the right that the petit jury will be drawn from a venire that represents a fair cross-section of the community. *Id.*

■ Appellant's last challenge to the jury selection process involves the age of the jury panel. He claims that an imbalance exists in the age gap of the jury panel, pointing out that he is a young man whereas the jury panel "consisted mostly of middle aged to senior citizen types...." Appellant, however, cites no authority in support of this "age gap" argument. Appellant has failed to show a systematic exclusion of any specific age group. *See Duren*, 439 U.S. at 364, 99 S.Ct. at 668–69; *State v. Williams*, 643 S.W.2d 639, 640 (Mo.App.1982). In addition, the State correctly points out that appellant was not entitled to a jury of any particular composition. *See Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 809, 107 L.Ed.2d 905 (1990).

Appellant's third allegation of error is that the trial court erred in admitting into evidence three letters written by appellant's co-conspirators after the crime. One letter was written by Mikkis Taylor to Joseph Burns. Two letters were written by Lamont Owens to Joseph Burns. Although not explicitly challenging the letters as hearsay, appellant argues that the letters were not admissible as proof of a conspiracy.

Statements made by co-conspirators during the course and in furtherance of the conspiracy are admissible as an exception to the hearsay rule. *State v. Frederickson*, 739 S.W.2d 708, 711 (Mo. banc 1987); *State v. Washington*, 707 S.W.2d 463, 468–69 (Mo.App.1986). If a conspiracy continues for any purpose, such as the concealing of the crime or taking measures to prevent or defeat prosecution, the declarations of one co-conspirator are admissible against the other, even if made after the completion of the crime which had been the objective of the conspiring. *State v. Clevenger*, 733 S.W.2d 782, 784–85 (Mo.App. 1987); *State v. Smith*, 631 S.W.2d 353, 360 (Mo.App.1982).

Appellant's argument that the State failed to independently establish that a conspiracy existed is without merit. There was direct and substantial independent evidence of a conspiracy through the testimony of Joseph Burns. He testified that appellant enlisted Burns, Owens and Taylor to carry out the robbery and that it was appellant who masterminded the robbery. The three letters, which discussed trial strategy and what each of the co-conspirators should say and do to beat the case, are admissible as evidence of their attempt to prevent or defeat prosecution. The trial court committed no error in allowing the letters into evidence.

Appellant's final assignment of error is that the trial court erred in overruling his motion for mistrial during the prosecutor's closing argument. Appellant argues that a portion of the prosecutor's closing argument "was not supported by the evidence and was inflammatory and prejudicial."

During the prosecutor's closing argument, he referred to a letter sent by appellant to Joseph Burns. Both men were in jail at the time the letter was written by appellant and received by Burns. In reference to the letter, the prosecutor stated: "What about that? What do the four dots mean? What does he say in here, what does he say in this letter? She talks, she dies." Following this statement, appellant's attorney objected, claiming that the argument assumed facts not in evidence, and he also moved for a mistrial. After appellant's objection and a brief conference at the bench in which the trial court overruled the objection, the prosecutor instructed the jury to "[g]o by how you remember the evidence. Joe Burns said there's going to be some shit. What that meant to him was if Brenda testified we'll get her. Go by how you remember the evidence, ladies and gentlemen."

The trial court is vested with broad discretion in controlling closing argument, *State v. Newlon*, 627 S.W.2d 606, 616 (Mo. banc 1982), and wide latitude is accorded counsel in his summation. *State v. McDonald*, 661 S.W.2d 497, 506 (Mo. banc 1983).

The prosecutor has the right to argue reasonable inferences from the evidence, and additionally, he has the right to draw any inference from the evidence which he believes in good faith to be justified. *State v. Armbruster*, 641 S.W.2d 763, 766 (Mo. banc 1982). The evidence relating to the letter was as follows:

PROSECUTOR: [Prosecutor reading from letter] "You know what Brenda is up to, don't you? She's going to take the stand against us, but we don't care because it's still going to be some blank, blank, blank, blank." Four blanks. What did that mean to you?

JOSEPH BURNS: Shit.

PROSECUTOR: What do you mean by—what did that mean there is going to be some shit?

JOSEPH BURNS: Just some stuff is going to happen to her if she gets out, I guess.

The prosecutor's inference was to be sure somewhat tenuous and melodramatic, but the jury was told to go by the evidence as they remembered it. We cannot imagine they were misled to defendant's prejudice by the argument.

The judgment is affirmed.

All concur.