Glenn RUFF, Appellant,

v.

STATE of Missouri, Respondent.

No. 58558.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 3, 1991.

J. Gregory Mermelstein, Mary Anderson, Columbia, for appellant.

William L. Webster, Atty. Gen., Barbara J. Wood, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Movant appeals the denial of his motion to vacate his conviction and sentence under Rule 29.15. We affirm.

Movant was convicted by a jury in September 1985 of one count of sale of a controlled substance in violation of § 195.-200.1(4), RSMo Cum.Supp.1984. He was sentenced as a persistent offender to fifteen years' imprisonment. This court affirmed Movant's conviction on direct appeal in *State v. Ruff,* 729 S.W.2d 556 (Mo.App. 1987).

On March 7, 1988, Movant filed a *pro se* motion pursuant to Rule 29.15. The motion asserted fifty-two grounds for relief. On April 20, 1988, Movant filed a timely amended motion to vacate or correct sentence or judgment. An evidentiary hearing was held on February 23, 1990. The motion court thereafter denied Movant's motion.

In the underlying case, the facts were as follows: At approximately 4 p.m. on August 27, 1984, Paul West, an undercover police officer, and Mark Fischer stopped Movant and inquired whether they could purchase a quarter-pound of marijuana. Movant replied that he could not get that much, but could acquire a "couple bags." Movant also requested $70 up front. After West paid the money, Movant told them to meet him back at the same location in an hour. At that time, West and Fischer were directed to a residence at 1134 Powell, where Movant gave West two bags of marijuana.

At trial, Movant presented the testimony of John and Margaret Dorheur, and Vicki Morris. The Dorheurs testified that on August 27, 1984, they lived at 1134 Powell; that they did not know West, Fischer, or Movant; and that West, Fischer and Movant had never been to their house.

Morris testified that on August 27, 1984, she was outside with Movant, who was living at her house at the time, and her

cousin, Teresa Illig. She stated that West and Fischer appeared and inquired if they knew where West and Fischer could acquire some marijuana. She testified that Movant said no, but Illig replied affirmatively. Morris further stated she saw Illig later that afternoon with two bags of marijuana at Illig's house. She testified that West and Fischer came by Illig's house and picked up the marijuana. Morris also testified that Illig told her that she, Illig, had sold the marijuana to West, and that Movant should not have to do any time for it, because he was not involved. Morris also testified that later Illig bragged to four other people, as well as Morris, that Illig had sold the marijuana.

Illig testified as a State's witness. She denied selling marijuana to West. Illig testified Movant had asked Illig to "help him out" by saying she had sold the marijuana to West. She also denied having told Vicki Morris that she was going to admit having sold the marijuana.

Defense counsel then sought to call his investigator, Anthony Kunce, as a witness for the purpose of impeaching Illig. Movant had repeatedly told his trial counsel that Illig would testify that she made the sale. Illig initially confirmed this to Kunce. The State objected, because Kunce had been in the courtroom for part of the trial. The trial court sustained the State's objection.

During closing argument, without objection from defense counsel, the State argued that Margaret Dorheur might know about Movant's drug sale in the Dorheur home but perhaps did not want her husband to know Movant was in their house while her husband was away at work. The State further argued that history is full of people like "Son of Sam" that one would never suspect of being involved in crime, and that if drugs were being sold in the Dorheur home, they would want to keep it a secret. The prosecutor also claimed that "the evidence in this case has completely stripped [Movant] of his presumption of innocence."

■ Appellate review of post-conviction relief sought in a Rule 29.15 motion to vacate or correct sentence and judgment is limited to a determination of whether the findings, conclusions and judgment of the motion court are clearly erroneous. *Day v. State*, 770 S.W.2d 692, 695[1] (Mo. banc 1989), *cert. denied, sub nom. Walker v. Missouri*, 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). The findings and conclusions of the trial court are clearly erroneous only if a review of the entire record leaves this court with the firm impression that a mistake has been made. *Id.* at 696.

■ All of Movant's points on appeal relate to ineffective assistance of counsel. To evaluate a claim of ineffective assistance of counsel, the United States Supreme Court established a two-part test in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1980). Movant must establish that his counsel's performance was deficient in that his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and that he was thereby prejudiced. *Mallett v. State*, 769 S.W.2d 77, 82[5] (Mo. banc 1989), *cert. denied*, 494 U.S. 1009, 110 S.Ct. 1308, 108 L.Ed.2d 484 (1989). Movant must prove his allegations regarding both prongs of the *Strickland* test by a preponderance of the evidence, and the court must begin with the presumption that his trial counsel was competent. *Amrine v. State*, 785 S.W.2d 531, 534[3] (Mo. banc 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990).

■ In Movant's first point on appeal, he contends the motion court clearly erred in denying his Rule 29.15 motion because Movant was denied effective assistance of counsel in that his trial counsel was operating under an actual conflict of interest which adversely affected his performance. Movant argues this conflict arises because State's witness Teresa Illig had worked in counsel's office, counsel was acquainted with her, and counsel (1) failed to depose or personally interview Illig prior to trial to determine what her testimony would be at trial; (2) failed to exclude investigator Kunce from the courtroom during trial so his testimony would be available to im-

peach Illig; (3) failed to call Ronnie Webb, Betty Morgenthal and Mary McHard to impeach Illig's trial testimony; (4) failed to have Illig post a recognizance bond when she was expected to be a defense witness; and (5) failed to release Illig from her subpoena after he learned she would be a State's witness.

■ In order to prove a conflict of interest claim, the existence of an actual conflict which adversely affected the defense counsel's performance must be shown. *Williams v. State*, 755 S.W.2d 609, 610[2] (Mo.App.1988). Movant has the burden of proving that counsel acted in such a way that was detrimental to Movant's interests. *Id.* Such a claim cannot be sustained on the basis of speculation and in the absence of evidence of an actual conflict. *State v. Abbott*, 654 S.W.2d 260, 274 [14–17] (Mo.App.1983).

In this case, Movant has failed to meet his burden of showing an actual conflict of interest. Both Movant and counsel testified at the evidentiary hearing that there was nothing that counsel did, or failed to do, as a result of his acquaintanceship with Teresa Illig. Each of Movant's allegations of error is attributable either to counsel's reliance on Movant's repeated assertion that Illig would testify favorably to the defense, or to trial strategy.

■ Movant alleges in his second point on appeal that trial counsel was ineffective for failing to perform four of the five allegations set forth in Point one above. (Movant does not allege ineffective counsel with regard to the failure to have Illig post a recognizance bond.) Movant fails to demonstrate that these incidents were due to a lack of skill or diligence demonstrated by a reasonably competent attorney, or that he was prejudiced thereby. Movant's first allegation was that counsel was ineffective for failure to depose Illig before trial to determine the nature of her trial testimony. The decision of whether to interview or depose a witness is generally a matter of trial strategy. *Fynn v. State*, 763 S.W.2d 210, 211[2–4] (Mo.App.1989). Both Movant and trial counsel testified at the motion

hearing that they expected Illig to testify on Movant's behalf. As the motion court found, counsel's decision to rely on Movant's representation that Illig would testify favorably was within the purview of his trial strategy.

■ Movant's second allegation of error is that counsel was ineffective because of his failure to exclude Investigator Kunce from the courtroom during the trial, thus resulting in Kunce being unable to testify to impeach Illig. This was also reasonable under the circumstances. Movant assured counsel on the day of the trial that Illig would testify for him. Thus Kunce followed his normal procedure and was present in the courtroom to "coordinate the witnesses." Once it became apparent to counsel that Illig would be an adverse witness, he sent Kunce out of the courtroom. As the motion court found, it is not ineffective assistance of counsel to fail to anticipate every conceivable turn of events at trial.

■ Movant next alleges ineffective assistance of counsel in counsel's failure to call as witnesses Donald Morris (Vicki's husband), Janet Davis, Ronnie Webb, Betty Morgenthal and Mary McHard. Movant submits that their testimony would have shown that Illig, not Movant, sold the marijuana. The selection of witnesses is a question of trial strategy and is not a foundation for a finding of ineffective assistance of counsel. *Sanders v. State*, 738 S.W.2d 856, 858 (Mo. banc 1987). Counsel testified he believed Donald Morris' testimony would have been inconsistent with that of other witnesses. He further testified that he believed the testimony of the other potential witnesses would have been cumulative and repetitive of the testimony of Vicki Morris. The failure to produce cumulative evidence is not ineffective assistance of counsel. *Johnson v. State*, 776 S.W.2d 456, 458[3, 4] (Mo.App.1989). Counsel's decision was a matter of trial strategy and not ineffective assistance of counsel.

■ Movant's final allegation of Point two is that counsel was ineffective in that he failed to release Illig from her subpoena

after learning she would be a witness for the State. The motion court found that "Movant was not denied effective assistance of counsel because counsel failed to anticipate that Illig would be an adverse witness. It follows that counsel was not ineffective due to his failure to release Illig from subpoena." We agree. Counsel's reliance on Movant's representation that Illig would testify on his behalf logically meant that he would retain her under subpoena. There is no indication that the action of defense counsel in not releasing Illig from the subpoena was less than that which a reasonably competent attorney would have done under similar circumstances. Movant's first and second points on appeal are therefore denied.

Movant's third point on appeal is that his trial counsel was ineffective for failing to object to portions of the State's closing argument, resulting in a deprivation of his right to a fair trial. Movant specifically objects to the State's supposed implication that Movant and Margaret Dorheur were romantically involved; that the Dorheurs were like "Son of Sam" in that the jurors would not suspect them of being involved in crime; that Movant failed to call witnesses who, if Movant were innocent, would have been called to testify; and that Movant had been "stripped" of his presumption of innocence.

■ To obtain post-conviction relief for a defense counsel's failure to object to the State's argument, Movant must show that an objection would have been meritorious, and that the failure to object resulted in substantial deprivation of the right to a fair trial. *Taylor v. State,* 782 S.W.2d 741, 743[1, 2] (Mo.App.1989). Movant has not met that burden here.

■ The prosecutor's statement that Margaret Dorheur had a motive for not telling the truth, in that she did not want her husband to know Movant was in the house while her husband was at work, was fairly drawn from the evidence. The undercover officer testified he purchased marijuana at the Dorheurs' address, and that there were other individuals present, possibly including a female. The prosecutor's suggestion of a possible motive was a reasonable inference from the evidence presented.

■ The other statements to which Movant objects were made in rebuttal to defense counsel's closing argument. Defense counsel stated that the Dorheurs were "Christian, God-fearing people" who weren't "out drinking with dope dealers that day," which apparently prompted the prosecutor to respond that the Dorheurs were like "Son of Sam" in that no one would suspect them of being involved in crime. Defense counsel further asserted that Movant asked Illig to testify because "she did it," and she "told all sorts of people she did it." The prosecutor responded in his closing argument that Movant failed to call witnesses who would have been called to testify if he were innocent. Defense counsel also stated: "before we put a man in jail ... we clothe him with the presumption of innocence." The prosecutor retaliated with the statement that the evidence had stripped Movant of this presumption, and showed that Movant was guilty. It is a rule of law that a defendant may not provoke a reply to his argument and then assert error. *State v. Bockes,* 676 S.W.2d 272, 276[1] (Mo.App.1984). Thus counsel could not have objected to the prosecutor's statements. Point denied.

■ In Movant's fourth point on appeal, he submits that his defense counsel was ineffective for objecting to the State's challenge for cause of venireperson Sherry Ellsworth. Movant argues that counsel was aware that Ellsworth had discussed the case with witness Vicki Morris and failed to object to the challenge, thus prejudicing Movant.

During voir dire, venireperson Ellsworth stated that she had a conversation with defense witness Vicki Morris prior to the trial. She stated that Morris told her it was a drug case and inquired whether Ellsworth had ever served on a jury before. The State sought to strike Ellsworth because of this conversation. Movant's counsel objected, stating that both counsel had spoken with Ellsworth and had come to the

conclusion that that was the whole of the conversation. The trial court denied the request to strike, and Ellsworth served as a juror. At the post-conviction hearing, Morris testified that Ellsworth stated: "Well, I think anyone that was running with a fourteen-year-old girl dealing with drugs deserves whatever he gets." Morris also testified she informed defense counsel of this conversation, but he just "shrugged if off." However, counsel testified that he was aware of the conversation, but not of Ellsworth's statement. He further testified that if he had been aware of it, he would have stopped the trial immediately and questioned the jury.

The motion court relied on counsel's testimony that he was not aware of any bias by Ellsworth and found that Movant was not denied effective assistance of counsel. We agree. Assessing the credibility of witnesses is the role of the motion court. *See Salkil v. State*, 760 S.W.2d 142, 144[2] (Mo. App.1988). Thus, given that counsel was not aware of Ellsworth's statement, it was not unreasonable of him to object to the State's challenge. Point denied.

 Movant's final point on appeal is that Movant's trial counsel was ineffective in that he failed to adequately investigate Movant's claim that the undercover officer, Paul West, had been involved in the past in the falsification of police reports while employed at the Montgomery County Sheriff's Department. At the post-conviction evidentiary hearing, counsel testified that he had asked the prosecutor to ask West about it, and West denied it. Counsel further testified he did not ask West about falsification of reports at trial because he did not believe a denial from West would help Movant's case, and counsel would not have been able to collaterally impeach West on the issue.

The decisions of trial counsel in terms of investigation are given great deference. *State v. White*, 782 S.W.2d 461, 464[4–6] (Mo.App.1990). In order to establish ineffective assistance of counsel in the failure to investigate, it is necessary to show prejudice. *Guinan v. State*, 726 S.W.2d 754, 758[9, 10] (Mo.App.1986), *cert.*

*denied*, 484 U.S. 873, 108 S.Ct. 210, 98 L.Ed.2d 161 (1987). In other words, Movant must show that a "viable defense" was overlooked by counsel. *Id.*

Defense counsel's testimony that he did not believe a denial on the stand by West would help Movant's case clearly renders this decision by counsel a matter of trial strategy. Further, there is no indication that Movant was prejudiced as a result of this strategic decision. Movant contends he was thus deprived of the opportunity to impeach West. However, the failure to impeach a witness is a matter of trial strategy and does not serve as a basis for a claim of ineffective assistance of counsel. *Roberts v. State*, 775 S.W.2d 92, 95[4] (Mo. banc 1989). Point denied.

Judgment affirmed.

PUDLOWSKI, P.J., and STEPHAN, J., concur.