STATE of Missouri, Respondent,

v.

Charles Scott FOX, Appellant.

Charles Scott FOX, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 65484, 67662.

Missouri Court of Appeals,
Eastern District,
Division Five.

Jan. 9, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 7, 1996.

Application to Transfer Denied
March 26, 1996.

James Knappenberger, Charles M. Shaw Law Firm, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

SIMON, Judge.

Charles Scott Fox, appellant, appeals his sentence based upon a finding of guilty by a jury of involuntary manslaughter, § 565.024.1 RSMo 1993, and armed criminal action, § 571.015 RSMo 1993. (All further references shall be to RSMo 1993 unless otherwise noted.) He was sentenced to consecutive terms of seven and thirty years. Appellant also appeals the denial of his 29.15 motion after an evidentiary hearing. The appeals are consolidated herein pursuant to Rule 29.15(1).

On appeal, appellant contends that the trial court erred in: 1) denying his motion for judgment of acquittal in that the State failed as a matter of law to present sufficient evidence proving beyond a reasonable doubt that he was reckless as required by § 565.024.1; 2) not granting a new trial; 3) allowing a State's witness to improperly testify as to the character of appellant; 4) allowing the prosecutor to make improper statements during closing argument; 5) allowing a lay witness to testify concerning blood on appellant's hand; 6) allowing the State to present evidence regarding appellant's inquiry of the police concerning the charges against him; and 7) denying appellant's Rule 29.15 motion. We affirm.

We accept as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *State v. Dulany*, 781 S.W.2d 52, 55 [2, 3] (Mo. banc 1989). In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.*

In his first point on appeal, appellant contends that the State failed as a matter of law to present sufficient evidence proving beyond a reasonable doubt that he was reckless as required by § 565.024.1 for a conviction of involuntary manslaughter. The State contends the following evidence supports appellant's convictions.

The record shows that on the evening of May 8, 1993, appellant and the victim, Daymon Pogue (Pogue), were in a bar in Jefferson County. Both men were intoxicated. At some point during the evening, appellant and Pogue were involved in a verbal argument. Around midnight, appellant broke up a fight between Pogue and another individual on the parking lot. Appellant and Pogue then got into a verbal exchange. Appellant then returned to the bar and told Jack Hampton, Jr. (Hampton), a bouncer at the bar, "I think I killed that m—— f——." Hampton then went outside and found Pogue lying on the parking lot.

After police officers arrived at the scene, it was apparent that Pogue had a stab wound in his abdomen. Pogue died from internal bleeding. A lock-blade knife with a five and one-half inch blade was found on the roof of a building approximately one-hundred feet

from where the body was found. The knife was consistent with the weapon which inflicted the wound on Pogue. At this time, a spot on appellant's hand, which appeared to be blood, was noticed by Officer Tim Lewis. Appellant then tried to rub off the spot, and the police officers restrained him and put a plastic bag on his hand to prevent him from rubbing the spot off. Appellant was arrested and informed of his *Miranda* rights. Appellant then waived his rights and agreed to talk to the police.

Appellant gave several conflicting stories regarding his confrontation with Pogue in the parking lot. Initially, appellant denied being involved in the stabbing. Later, appellant asked police officers to explain to him the different classifications of homicide. The officers explained the different degrees and informed appellant he had been charged with murder in the first degree and armed criminal action. Appellant responded that he thought he should be charged with a lesser crime. When asked why he thought so, appellant responded "just because." Appellant asked the officers to explain the homicide classifications again. After they did so, appellant made statements in which he admitted to being involved in the stabbing.

Appellant said he followed Pogue out to the parking lot and verbally confronted him. He then pulled out the knife which had been found by the police, and showed or pointed it at Pogue and told him to back off. Pogue then came at him, fell, and made contact with the knife. Dr. Mary Case, an expert for the State, testified that Pogue's blood alcohol content at the time of the stabbing was approximately .33%, and this level of intoxication greatly impaired Pogue's reflex and motor skills. The State contends that this evidence supports the involuntary manslaughter instruction.

Other evidence adduced at trial is as follows. Dr. Case testified that the wound inflicted by the knife was intentionally made, and could not have been made by someone falling on the knife. She also testified that Pogue's nose was broken and that this injury occurred approximately the same time as the stab wound. Her testimony was uncontroverted. Furthermore, appellant put on evidence to support a theory of self-defense. Appellant presented testimony of Steve Streissel (Streissel), an eyewitness to the stabbing. Streissel testified that he saw appellant and Pogue arguing in the parking lot, and that appellant told Pogue he did not want to fight. Appellant then reached into his pocket, but Streissel was unable to see if appellant withdrew a knife. Thereafter, Pogue took two swings at appellant with a beer bottle before falling on appellant.

In its closing argument, the State argued that appellant was guilty of first-degree murder, and the evidence showed appellant acted intentionally rather than recklessly. At the close of all evidence, the State submitted jury instructions on first-degree murder, second-degree murder, involuntary manslaughter, and armed criminal action. Appellant submitted a self-defense instruction. The jury found appellant guilty of involuntary manslaughter and armed criminal action. Appellant's 29.15 motion was denied after an evidentiary hearing.

■■■ Section 565.024.1(1) provides that a person commits the offense of involuntary manslaughter if he "[r]ecklessly causes the death of another person." The term "recklessly" is defined in MAI–CR 3d 313.10 and was included in the verdict-directing instruction submitting involuntary manslaughter in this case. It provides in pertinent part:

> In determining whether the defendant recklessly caused the death of [name of victim], you are instructed that a person acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances.

A trial court may not submit manslaughter to the jury, as a lesser included offense of murder, unless there is an evidentiary basis for convicting the defendant of that charge. *State v. Anding,* 752 S.W.2d 59, 61–62 [1, 2, 3] (Mo. banc 1988). In particular, there must be sufficient evidence to support a finding that the defendant recklessly caused the death. *State v. Morris,* 784 S.W.2d 815, 819

[5] (Mo.App.1990). In determining whether there is a submissible case of involuntary manslaughter, the court reviews the record to determine whether there was evidence of recklessness as opposed to intentional misconduct. *See State v. Smith*, 891 S.W.2d 461, 467 [13, 14] (Mo.App.1994). Furthermore, it is within the jury's province to believe all, some, or none of the witness' testimony in arriving at their verdict. *State v. Dulany*, 781 S.W.2d 52, 55 [2, 3] (Mo. banc 1989)

■ Here, appellant admitted he pulled out a knife and threatened Pogue with it, even though both he and Pogue were intoxicated, and that Pogue fell on the knife. The jury was free to believe this testimony and disregard appellant's other testimony that he was threatened with a beer bottle and acted in self-defense. *See Dulany, supra.* As a result, the jurors could find that by displaying and pointing the knife toward Pogue appellant was acting recklessly. *See State v. Miller*, 772 S.W.2d 782, 783–84 [1] (Mo.App. 1989). As a result, the involuntary manslaughter instruction was supported by the evidence. Point denied.

In his second point on appeal, appellant contends that the trial court erred in not granting him a new trial because the jury's sentence violates the United States Constitution in that: a) the length of the sentence violates the 8th Amendment prohibition against cruel and unusual punishment; and b) his sentence for involuntary manslaughter and armed criminal action violates the 5th Amendment prohibition against double jeopardy.

■ It is important to note that appellant did not raise these issues in his motion for a new trial, and as a result, has preserved nothing for review. In any event, we review for plain error. Defendant bears the burden of proving that the alleged error is of such a magnitude that it constitutes plain error. *State v. Sielfleisch*, 884 S.W.2d 422, 430 [12, 13] (Mo.App.1994). Plain error review mandates reversal only if the error results in manifest injustice. *State v. Shurn*, 866 S.W.2d 447, 460 [27, 28] (Mo. banc 1993).

■ Here, appellant claims that the jury's sentence of seven years for involuntary man-

slaughter and thirty years for armed criminal action, which are to run consecutively, violate the 8th Amendment prohibition against cruel and unusual punishment. When the sentence imposed is within the range prescribed by the statute, it cannot be judged excessive by the appellate court and the consecutive effect of the sentences does not constitute cruel and unusual punishment. *State v. Donnell*, 862 S.W.2d 445, 453 [18, 19] (Mo.App. 1993). Here, appellant's sentences were within the range prescribed by statute. *See* §§ 565.024 and 571.015. As a result, appellant's sentences do not constitute cruel and unusual punishment.

■ Appellant also contends that his convictions violate the double jeopardy provisions of the 5th Amendment. In *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542 (1983), the United States Supreme Court held that with respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended, and a conviction of armed criminal action and the underlying felony does not constitute double jeopardy. *See also State v. Bommarito*, 856 S.W.2d 680, 684 [6] (Mo.App.1993). Point denied.

■ In his third point on appeal, appellant contends the trial court erred in allowing Hampton to testify that appellant was an associate of a biker gang, in that this allowed the State to introduce improper character evidence. Appellant concedes that this point was not raised in his motion for a new trial, and requests plain error review.

Evidence of membership in various organizations has been found to be irrelevant and prejudicial. *State v. Cavener*, 356 Mo. 602, 202 S.W.2d 869, 873–74 [3, 4] (1947). Here, the State's solicitation of Hampton's testimony stating appellant was a member of a biker gang was improper. However, taken in context, the statement alone does not rise to a level of manifest injustice. *See Shurn, supra.* Point denied.

In his fourth point on appeal, appellant contends that the trial court erred in failing to control closing argument in that: a) the

court allowed the State to argue punishment in its rebuttal closing for the first time; b) the court sustained an objection by the State to appellant's closing argument which confused the jury; and c) the State argued a matter not in evidence.

■■■■ The trial court is vested with broad discretion in controlling closing argument. *State v. Newlon*, 627 S.W.2d 606, 616 (Mo. banc 1982). In general, the rule is that if a prosecutor intends to argue punishment to the jury, it must be discussed in the opening portion of the State's argument in order that defense counsel will have an opportunity to respond to the argument. *State v. Mills*, 872 S.W.2d 875, 879 [6] (Mo.App. 1994). Here, the record indicates that the State did discuss punishment in the opening portion of its closing argument.

■■■■ Next, appellant argues that the trial court erred when it sustained the State's objection to his argument which attempted to instruct the jury on the law of self-defense beyond what was contained in the jury instructions and that the jury was confused by the trial court's actions. The record shows that the following occurred during appellant's closing argument:

> [Counsel for appellant]: Does the defendant have any duty to retreat into his car, or back into the bar? No, he has none.
>
> [Prosecutor]: Objection. It's not part of any instruction in this case.
>
> The Court: The Court will instruct upon the law.
>
> [Prosecutor]: I ask that the last comment be stricken, and the jury instructed to disregard it.
>
> The Court: As argument, it is not stricken.

It is the court's duty and not counsel's duty to instruct the jury on the law. *State v. Corpier*, 793 S.W.2d 430, 444 (Mo.App.1990). The prosecutor's objection and the trial court's statement did not suggest appellant misstated the law, but instead, pointed out that it is the court's duty, and not counsel's duty, to instruct the jury on the law. *See Corpier, supra.* As a result, the trial court did not err.

■■■■ Next, appellant argues that it was improper for the prosecutor to argue that appellant broke Pogue's nose, because the argument was not supported by the evidence. The record reveals that appellant did not object to the prosecutor's argument, and therefore, appellant has not preserved this point for review. However, we will review for plain error. Rule 30.20.

A prosecutor has the right to argue reasonable inferences from the evidence. *State v. Jacobs*, 813 S.W.2d 318, 322 (Mo.App. 1991). This includes the right to draw any inference from the evidence which he believes in good faith to be justified. *Id.* Here, the record does not reveal any evidence that anyone broke Pogue's nose before he went outside and fought with appellant. Dr. Case testified that Pogue's nose was broken, that his injury happened at the same time as the stab wound, and that it could not have occurred more than a couple of hours before Pogue's death. Furthermore, no witness testified about Pogue appearing as if he had a broken nose before appellant attacked him. Therefore, the prosecutor could draw a reasonable inference from the evidence and argue that appellant was the person who broke Pogue's nose. *See Jacobs, supra.* Appellant's fourth point is denied.

■■■■ In his fifth point on appeal, appellant contends that the trial court erred in allowing testimony by Officer Lewis, over appellant's objection, that appellant had blood on his hands when he was arrested in that said testimony was not supported by scientific evidence. However, other evidence before the court established essentially the same fact. In appellant's statement to the police, which was admitted without objection, he stated the substance on his hand was blood. Therefore, there was no prejudice. *See State v. Marvel*, 756 S.W.2d 207, 213 [11, 12] (Mo. App.1988). Point denied.

In his sixth point on appeal, appellant contends that the trial court erred in allowing the State to present evidence regarding his inquiry of the police concerning the charges against him. Specifically, appellant asked the police about the different degrees of murder and appellant contends the State's introduction of these statements into evidence

violates the 5th and 6th Amendments of the United States Constitution, as well as Article I, section 18(a) of the Missouri Constitution. Here, the officers explained the different degrees and informed appellant he had been charged with murder in the first degree and armed criminal action. Appellant responded that he thought he was being railroaded, that he should not be charged with murder in the first degree, and should probably be charged with a lesser crime. When asked why he thought so, appellant responded "just because." Appellant asked the officers to explain the homicide classifications again. After they did so, appellant made statements in which he admitted to being involved in the stabbing.

■■■ Under the 5th and 6th Amendments of the United States Constitution, a defendant has a constitutional right to assistance of counsel and protection against self-incrimination. *Miranda v. State of Arizona*, 384 U.S. 436, 443[2], 86 S.Ct. 1602, 1611, 16 L.Ed.2d 694 (1966). However, the defendant may waive these rights, provided the waiver is made voluntarily, knowingly, and intelligently. *Id.* at 444[3–9], 86 S.Ct. at 1612. Furthermore, the proper standard to be applied in determining the question of waiver is that it is incumbent upon the state to prove an intentional relinquishment or abandonment of a known right or privilege. *Brewer v. Williams*, 430 U.S. 387, 403[8–10], 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977).

■■■ Here, the record reveals that on numerous occasions appellant was informed of his *Miranda* rights, he indicated that he understood those rights, and he waived them. Furthermore, the statements in question occurred after such waivers. As a result, the State carried its burden by showing appellant intentionally relinquished his 5th and 6th Amendment right to counsel and right against self-incrimination. *See Miranda, supra; see Brewer, supra.* Point denied.

■■■ Appellant further contends that the introduction of his statements violate Article I section 18(a) of the Missouri Constitution which states that in criminal prosecutions the accused shall have the right to demand the nature and the cause of the accusation. However, Article I section 18(a) pertains to one's right to have an indictment or information that informs one of the crime charged, and does not stand for the proposition that a criminal defendant's inquiry into the potential charges against him cannot be used as evidence at trial. Appellant has not cited any case, nor has our research uncovered any, in which Article I section 18(a) prohibits the State from introducing appellant's statements concerning the different degrees of homicide. In any event, acts, conduct and declarations of an accused occurring after commission of an alleged offense which tend to show a consciousness of guilt are admissible. *State v. Williams*, 600 S.W.2d 120, 122 [7] (Mo.App.1980). As a result, appellant's declarations, after the commission of the alleged offense, tend to show a consciousness of guilt and are admissible. *See Williams, supra.* Point denied.

In his seventh point on appeal, appellant contends that the trial court erred in denying his Rule 29.15 motion because he received ineffective assistance of counsel in that his trial attorney: a) failed to depose a state's witness; b) failed to call an essential defense witness; and c) coerced defendant not to testify on his own behalf.

■■■ In his post-conviction proceeding, appellant has the burden of proving his grounds for relief by a preponderance of the evidence. Rule 29.15(h). Appellate review of a denial of post-conviction relief is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(j). The trial court's findings and conclusions are clearly erroneous if, after a review of the entire record, the appellate court is left with a definite and firm impression that a mistake has been made. *State v. Ervin*, 835 S.W.2d 905, 928 [42] (Mo. banc 1992).

In order for appellant to prevail on his claim of ineffective assistance of counsel, appellant must prove that trial counsel's performance was deficient and that this deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The performance inquiry must be whether counsel's assistance was reasonable consider-

ing all of the circumstances. *Id.* at 688, 104 S.Ct. at 2064. Furthermore, in order to show prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068.

■ Here, appellant contends that his trial counsel was ineffective because he did not depose a state's witness, Dr. Case, or hire his own expert. However, the decisions of trial counsel in terms of investigation are given great deference. *Ruff v. State,* 815 S.W.2d 460, 466 [18] (Mo.App.1991). Here, the court found that trial counsel had no duty to conduct depositions or hire his own expert because appellant had not provided him with funds for such and such expert would have cost approximately $1,000.00 a day. Further, trial counsel had a copy of the written report which Dr. Case issued concerning her examination of Pogue's body. The record shows appellant's proposed expert would have testified that the fatal wound could not have been made intentionally. However, appellant was convicted of involuntary manslaughter, an offense which does not require an intentional act. As a result, appellant has failed to prove that he was prejudiced in any way, and the findings of the court are not clearly erroneous.

Appellant also contends that his trial counsel was ineffective because he failed to call Nancy Dever (Dever) as a witness. Appellant alleges that Dever would have testified that she was on the parking lot to Reno's Palace and picked up a beer bottle and threw it away, thereby lending credibility to appellant's claim of self-defense.

■ The selection of witnesses is a question of trial strategy and is not a foundation for a finding of ineffective assistance of counsel. *Ruff v. State,* 815 S.W.2d at 464 [9, 10]. Here, trial counsel testified that he did not call Dever as a witness because she had found the alleged eye witness Steve Streissel and he believed the jury would have found it too coincidental that the person who allegedly found the beer bottle also miraculously found the defendant's star witness. Furthermore, to demonstrate that defense counsel was ineffective for failing to call a witness,

defendant must prove that the witness could have been located through reasonable investigation, that the witness would have testified if called, and that the testimony of said witness would have provided a viable defense. *State v. Campbell,* 830 S.W.2d 475, 478 [5, 6] (Mo.App.1992). Mere speculation to what the witness' testimony would have been is not sufficient. *Id.* Here, Dever did not testify at the post-conviction hearing, so the exact nature of her testimony is conjecture. *See Campbell, supra.* Point denied.

■ Appellant also contends that his trial counsel was ineffective in that trial counsel would not allow appellant to testify on his own behalf. Here, the court found that appellant and trial counsel discussed whether or not he should testify, and that appellant decided not to testify based on the advice of trial counsel. Trial counsel testified that he did not believe it was advisable for appellant to take the stand because he had thrown the knife onto the roof of an adjacent building, told conflicting stories to police concerning the alleged spot of blood on his hand, had not stepped forward and admitted that he was involved in the stabbing when police arrived, and had alcohol related driving offenses. Appellant contends that since trial counsel testified that he overbore appellant's will in getting him not to testify, appellant received ineffective assistance of counsel. However, the motion court apparently did not believe his testimony and in any event, appellant has failed to show that he was prejudiced by the action of trial counsel. If appellant testified he probably would have been cross-examined, and it is possible that he could have made detrimental statements. Point denied.

The judgment is affirmed.

CRANE, C.J., and BLACKMAR, Senior Judge, concur.